UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIESTA VENTURES BEVERCREEK, LLC, an Ohio limited liability company; and FIESTA VENTURES DM, LLC, an Ohio limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>QDOBA RESTAURANT CORPORATION, a Colorado corporation; and QDOBA FRANCHISOR LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 24-CV-2218 JLS (BLM)<br><br>**ORDER DENYING COUNTERCLAIM DEFENDANTS' AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>(ECF No. 30) |
| QDOBA FRANCHISOR, LLC, a Delaware limited liability company,<br><br>Counterclaimant,<br><br>v.<br><br>FIESTA VENTURES BEVERCREEK, LLC, an Ohio limited liability company; FIESTA VENTURES DM, LLC, an Ohio limited liability company; SHALINDER | |

| | |
|---|---|
| 1<br>2<br>3<br>4 | KULAR, an individual; and<br>KANWALDEEP SIDHU, an individual,<br><br>                                        Counterdefendants |

Presently before the Court are Plaintiff-Counterdefendants Fiesta Ventures Bevercreek, LLC; Fiesta Ventures DM, LLC; Shalinder Kular; and Kanwaldeep Sidhu's (collectively, "Counterdefendants") Amended Motion to Dismiss the Second and Fourth Counts in Counterclaim Plaintiff's Second Amended Counterclaim ("Am. Mot.," ECF No. 30) and Memorandum of Points and Authorities in Support thereof ("Am. Mem.," ECF No. 30-1).  Also before the Court are Defendant-Counterclaimant Qdoba Franchisor, LLC's Opposition to the Motion to Dismiss ("Opp'n," ECF No. 31) and Counterdefendants' Reply ("Reply," ECF No. 33).  Having considered the Parties' arguments, the Counterclaims ("Countercl.," ECF No. 18), and the law, the Court **DENIES** Counterdefendants' Motion.  Additionally, the Court **DENIES AS MOOT** Qdoba's Request for Judicial Notice (ECF No. 31-1).

## BACKGROUND

Fiesta Ventures Dayton ("FVD") is a franchisee that operates a Mexican food restaurant on behalf of franchisors, Qdoba Restaurant Corporation and Qdoba Franchisor LLC (collectively, "Qdoba").  FVD and Qdoba have a business relationship dating back to 2012 when FVD's owners, Shalinder Kular and Kanwaldeep Sidhu (collectively, "Owners"), entered into an agreement with Qdoba to operate three pre-existing Qdoba restaurant locations.  Countercl. ¶ 13.  From 2012 through 2019, Qdoba and FVD did not have the smoothest operating relationship; and, by 2019, FVD was operating just one location.  *Id.* ¶¶ 14–17.

Notwithstanding their business history, in July of 2019, Qdoba and FVD signed a development agreement to explore opening a Qdoba restaurant in Bevercreek, Ohio.  *Id.* ¶ 30.  After myriad issues, extensions, and modified agreements, Fiesta Ventures Bevercreek ("FVB")—a new entity owned and operated by FVD and Owners—and Qdoba

signed a new franchise agreement to operate and open the Bevercreek location in April of 2023. *Id* ¶ 31. The Bevercreek restaurant, however, was unable to open on time apparently due to leasing issues, and Qdoba issued a notice of default to FVB on February 12, 2024. *Id*. Instead of terminating their franchise agreement, FVB and Qdoba entered into a Workout Agreement whereby the Bevercreek restaurant was obliged to be open and operating by May 31, 2024. *Id.* ¶ 34; ECF No. 1-2 ("Work. Agr."), Ex. 7 at 144.[1] Another provision of the Workout Agreement germane to this case is a provision holding affiliates of FVB—namely Owners and FVD—liable for any future default of FVB's. Work. Agr. at 144. Qdoba further extended the Bevercreek restaurant's opening deadline three times: once through June 20, 2024; again through July 31, 2024; and finally through September 30, 2024. Countercl. ¶ 35.

Finally, after receiving notice from the Bevercreek restaurant's landlord that Bevercreek's lease was being terminated, Qdoba notified FVB that Qdoba was terminating FVB's franchise agreement. *Id.* ¶ 39. FVB sought to cure the defaults once again, however Qdoba did not re-evaluate their decision to terminate. *Id*. Subsequently, purportedly due to FVB's default and subsequent termination, Qdoba exercised its right to terminate FVD's franchise agreement, pursuant to the provision in the Workout Agreement which held FVD liable as an affiliate for any default of FVB's. *Id.* ¶ 40; Work. Agr. at 144.

Plaintiffs FVD and FVB filed suit on November 26, 2024, alleging that Qdoba breached the terms of their contracts with both FVD and FVB, and that Qdoba's terminations were unfair business practices under California Law. ECF No. 1 ("Compl."). Defendant Qdoba Franchisor, LLC filed an Answer and Counterclaim seeking: (1) a declaratory judgment regarding the termination of the FVB agreement; (2) lost future royalties for the termination of the FVB agreement; (3) a declaratory judgment regarding the termination of the FVD agreement; (4) lost future royalties for the termination of the

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page of the cited filing.

FVD agreement; (5) attorneys' fees pursuant to Fiesta Ventures's breaches; and (6) enforcement of owners Kular and Sidhu's personal guarantees. Countercl. ¶¶ 48, 54, 62, 68, 72, 77. In response, Fiesta Ventures filed the instant Motion, seeking to dismiss the Second and Fourth Counterclaims for failing to state a claim upon which relief can be granted. *See generally* Am. Mot.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting

*Twombly*, 550 U.S. at 557). This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 675 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

"In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019) (citing *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Fiesta Ventures moves to dismiss Counterclaims Two and Four of Qdoba's Second Amended Counterclaim on multiple grounds. Am. Mot. at 3. First, Fiesta Ventures argues that Qdoba is not entitled to lost future royalties as a matter of law under the California precedent established in *Postal Instant Press, Inc. v. Sealy*, 51 Cal. Rptr. 2d 365 (Ct. App. 1996). And second, Fiesta Ventures argues that lost future royalties are not available as a remedy to Qdoba because they violate public policy as set forth in the California Franchise Relations Act and California Franchise Investment Law. *Id.* at 14.

Because the Court finds that the claims contain plausible allegations upon which Qdoba may seek damages for lost future royalties and that the public policy argument is inapposite, the Court **DENIES** Fiesta Ventures's Amended Motion to Dismiss Counterclaims Two and Four. Furthermore, the Court **DISMISSES AS MOOT** Qdoba's Request for Judicial Notice as the documents included in the request are not relevant to the Court's analysis.

## I.     Lost Future Royalties as Damages Under *Sealy*

Fiesta Ventures argues that Qdoba is seeking a form of relief to which they are not entitled because *Sealy* precludes awarding lost future royalties. Am. Mem. at 12. *Sealy* generally stands for the proposition that lost future royalties are unavailable in the absence of a total breach when a franchisor exercises its right to terminate a franchise agreement. 51 Cal. Rptr. 2d at 370. Fiesta Ventures's argument aligns with the reasoning expressed in *Sealy*; namely that, when a franchisor exercises its contractual right to terminate a franchise agreement, the franchisor may not obtain lost future royalties. Am. Mem. at 12. Qdoba does not agree that *Sealy* is applicable in this case, arguing that it is both factually and legally distinguishable. Opp'n at 9.

To the extent Fiesta Ventures argues that *Sealy* categorically forecloses lost future royalties as a matter of law, the Court is unpersuaded. The Court will accept *Sealy* as controlling for the purposes of resolving the instant Motion. Nonetheless, even if the Court accepts *Sealy* as controlling, *Sealy* still contemplates the possibility of a total breach, and with it, the availability of awarding damages in the form of lost future royalties.

### A.     *Case Description of* **Sealy**

In *Sealy*, a franchisor sought lost future royalties as damages after terminating a franchise agreement due to the franchisee's multiple alleged breaches. 51 Cal. Rptr. 2d at 367. The court in *Sealy* held that, although the franchisee breached the terms of the franchise agreement, because the franchisor elected to terminate the agreement in full, the franchisor was not entitled to receive lost future royalties. *Id.* at 369. Elaborating upon this ruling, the court stated that "[n]othing in the franchisee's failure to pay past royalties in any sense prevented the franchisor from earning and receiving its future royalty payments. No, it was the franchisor's own decision to terminate the franchise agreement that deprived it of its entitlement to those future royalty payments." *Id.*

The *Sealy* court also found that an exception to this rule would apply in the event of a franchisee's total breach; indeed, there might be a case where "the breach may be of a type which directly causes the franchisor to lose future profits independent of the

franchisor's own termination of the franchise agreement." *Id.* at 375. Citing landmark California Supreme Court caselaw, the court said, "it is not surprising the California Supreme Court allowed the plaintiff to recover future profits it was prevented from earning as a direct result of defendant's breach," in a case "where the franchisor wrongfully terminates the franchise or closes down a product line." *Id.* at 370 (citing *Hollywood Cleaning & Pressing Co. v. Hollywood Laundry Serv.*, 17 P.2d 712, 713 (Cal. 1932) (stating that, in a case of a franchisor's wrongful termination, it would be proper to award "not only the damages that have accrued at the time of trial, but also the loss that will be incurred for the balance of the contract period")). *Sealy* itself is a very fact-specific opinion. 51 Cal. Rptr. 2d at 371. In point of fact, *Sealy* explicitly states, "we wish to make it clear we are not holding franchisors can never collect lost future royalties for franchisee's breaches of the franchise agreement. That entitlement depends on the nature of the breach and whether the breach itself prevents the franchisor from earning those future royalties." *Id*.

Ultimately, *Sealy* seems to condition a finding for causation upon whether a breach was partial or total, not necessarily upon whether the lost profits are natural and direct consequences of the breach. In the event of a partial breach, if a franchisor elects to exercise its right to terminate the agreement, the franchisor is the direct and proximate cause for the termination and therefore cannot recover lost future damages. *Id.* at 369. However, should the breach be total, a franchisor's decision to terminate is predicated upon the total breach and repudiation of the agreement, making the breaching party (the franchisee in this hypothetical) the direct and proximate cause for the termination. *Id.* at 375.

### B. *Concerns With* Sealy

The Court is concerned that an adoption of *Sealy* could potentially create untenable, even unjust, circumstances for plaintiffs, especially in such a case as this one, where a defendant has possibly repeatedly failed to perform. The *Sealy* court acknowledged the somewhat onerous burden its causation analysis placed on a franchisor when faced with a

breaching franchisee, stating that, "if the franchisor had not terminated the franchise agreement it might have been required to sue again and again . . . ." 51 Cal. Rptr. 2d at 370. Or, in other words, under *Sealy*, a plaintiff would be forced to periodically sue the defendant to recover profits, or risk forfeiting recovery altogether because, by terminating the agreement, the plaintiff would be the direct and proximate cause of the termination, *despite* the defendant's defaults. *Id.*

This result forms the basis for a great deal of the criticism leveled at *Sealy*. *See, e.g.*, *Radisson Hotels Int'l v. Majestic Towers, Inc.*, 488 F. Supp. 2d 953, 963 n.10 (C.D. Cal. 2007) ("In this Court's view, the *Sealy* Court's holding that a franchisor has no remedy but to sue the franchisee over and over again as lost royalties is simply untenable."). And the Court is wary of any potential acceptance of *Sealy* for the same reasons. Yet even more suspect to the Court is *Sealy*'s apparent departure from California contract law.

In an action for a breach of contract, the damages awarded to an injured party are meant to give them the benefit of that bargain, to place them in the same position they would have been in had the contract been performed. *Coburn v. Cal. Portland Cement Co.*, 77 P. 771, 772–73 (Cal. 1904); *see also* Cal. Civ. Code § 3300 ("[T]he measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."). In a case "where the object of the contract is profits," it is "presumed that lost profits were contemplated by the parties" at the time of agreement. *Brandon & Tibbs v. George Kevorkian Acct. Corp.*, 227 Cal. Rptr. 40, 48 (Ct. App. 1990). Furthermore, California Code provides that, in the event of a breach, a person may recover what they "could have gained by the full performance thereof on both sides." Cal. Civ. Code § 3358. Damages for lost profits are traditionally limited partially by causation, that is to say, "[t]he only prerequisite to recovery of lost profits is proximate causation: the lost profits must be the natural and direct consequences of the breach." *Brandon & Tibbs*, 227 Cal. Rptr. at 48.

The aforementioned analysis in *Sealy* hardly seems to adhere to the goals of contract

damages as enumerated under California law and as expounded upon above. As a court doubtful of *Sealy* stated, "where a franchisee breaches a contract and demonstrates that it is unable or unwilling to meet its obligations, lost future profits are a proximate result of the breach because the franchisee's actions are a 'substantial factor in bringing about that loss or damage.'" *Radisson Hotels Int'l, Inc.*, 488 F.Supp. 2d at 963 n.10 (quoting *US Ecology, Inc. v. State*, 28 Cal. Rptr. 3d 894, 916–17 (Ct. App. 2005)).

Although the Court expresses skepticism that *Sealy* even stands for the correct standard in this district, let alone that it should be a controlling case in this matter, it need not decide whether *Sealy* controls at this point because the total breach exception outlined in *Sealy* could apply based on the factual allegations in this case.

### C. *Total Breach Exception in* Sealy

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (citing *Reichert v. General Ins. Co.*, 442 P.2d 377, 377 (Cal. 1968)). If applying *Sealy*, once a court finds there may have been a breach, the court must next determine if the breach is total or partial under California law. This is material precisely because *Sealy* leaves open the possibility of awarding lost future royalties only in the event of a total breach. So, the question therefore is not one of whether there was a breach, but whether the breach was partial or total. The court in *Sealy* merely states that it is dependent on the nature of the case, which leaves this Court without guidance in the instant case. 51 Cal. Rptr. 2d at 371.

Because *Sealy* does not explore what a total breach is, which implicates the potential application of the total breach exception, the Court turns to the standard set by the California Supreme Court in *Coughlin v. Blair*, 262 P.2d 305 (Cal. 1953), to shed some light on how to determine a partial versus a total breach under California law.

In *Coughlin*, the plaintiff brought suit against the defendant because, although the defendant "did not repudiate the contract," he also did not "perform [his] obligations

thereunder." *Id.* at 308. The court found that, "[i]n an action for damages for such a breach, the plaintiff in that one action recovers all his damages, past, and prospective." *Id.* (citing *Abbott v. 76 Land & Water Co.*, 118 P. 425, 427–28 (Cal. 1911)). This is vital to a case involving a total breach of contract because, should a plaintiff wish to bring a subsequent action for additional damages, it would be barred by res judicata. *Id.* Comparable to how the court in *Sealy* found that "the franchisor-franchisee relationship introduces some special considerations," the court in *Coughlin* found that the circumstances of each case would be determinative in deciding whether the breach was total. *Sealy*, 51 Cal. Rptr. 2d at 375; *Coughlin*, 262 P.2d at 309.

The plaintiff in *Coughlin* repeatedly requested for the defendant to perform under the terms of their contract; however, the plaintiff did not file for a breach of contract until nearly a year after the alleged default. *Id.* at 312. Had the plaintiff brought the action within the first year, the court may have treated that breach as partial for, in a case where "the injured party has fully performed his obligations under a bilateral contract, courts usually treat a breach as partial unless it appears that performance of the agreement is unlikely and that the injured party may be protected only by recovery of damages for the value of the promise." *Id.* at 311–12 (citing *Gold Mining & Water Co. v. Swinerton*, 142 P.2d 22, 30 (Cal. 1943)). When the plaintiff brought suit against the defendant, the plaintiff was indicating that the defendant's default was no longer considered to be a partial breach. The court found, therefore, that,

> Defendants could not reasonably expect plaintiffs to continue indefinitely to treat the breach as partial. Even if a breach might be considered partial at the time performance is due, there is a limit to the time a promise must thereafter await performance. . . . Despite repeated requests by plaintiffs, defendants had not installed the improvements called for by the contract. It was uncertain when if ever they would do so. Although defendants had not expressly repudiated the contract, their conduct clearly justified plaintiff's belief that performance was either unlikely or would be forthcoming only when it suited defendant's convenience. Plaintiffs were not required to endure

>that uncertainty or to await that convenience and were therefore justified in treating defendant's non-performance as a total breach of the contract.

*Coughlin*, 262 P.2d at 312.

The same concerns which appear to have motivated the court in *Sealy* to provide a total breach exception in the first place also find footing in *Coughlin*. To wit, that it feels contrary to California law to force a party to repeatedly sue in order to recover the amount of damages to which they would have been entitled had they been able to pursue lost future royalties as damages.

### D.   Application of *Coughlin*

The definition set out in *Coughlin* provides a workable standard through which a partial or a total breach may be ascertained. The Court recognizes that Qdoba does not believe *Sealy* is applicable in this case, however the Court has already decided to accept *Sealy* for the purposes of the instant Motion. Here, Qdoba argues that the reason for the termination was "FVB's total failure to perform under that agreement," thereby further distinguishing the proximate cause analysis from that in *Sealy*. Opp'n at 10. "Where Qdoba was frustrated by FVB's total breach of its Franchise Agreement, Qdoba had the contractual right to end its relationship with FVB's affiliate, [FVD]." *Id.* at 12. Additionally, although Qdoba entirely rejects *Sealy*, Qdoba also asserts both that Fiesta Ventures's breach was total and that Fiesta Ventures was the direct and proximate cause of Qdoba's damages. *Id.* at 9. Fiesta Ventures argues, on the other hand, that "there is not a single factual [sic] allegation of any breach of the Dayton Franchise Agreement, let alone allegations sufficient to support any claim or inference that there was a total breach of the Dayton Franchise agreement that prevented Qdoba Franchisor from receiving the benefit from that franchise agreement."[2] Reply at 10.

---

[2] To the extent Fiesta Ventures contends that they did not breach the FVD franchise agreement, the presence of Section 28.3.14 in the franchise agreements, holding FVD and FVB responsible for each other's breaches, plausibly proves otherwise. It is enough for Qdoba to allege that FVB breached their

At the dismissal stage, the Court must accept the facts alleged by Qdoba in its Counterclaim as true. Subsequently, under those facts, the Court draws all reasonable inferences in favor of Qdoba's claims. *See Wi-Lan Inc.*, 382 F. Supp. 3d at 1020. Pertinent to the Court's analysis is Qdoba's breakdown of the elements required for a successful breach of contract claim in California. Opp'n at 14. Thus, the Court finds Qdoba has plausibly alleged that: (1) Fiesta Ventures and Qdoba entered into contractual agreements, one with FVD and one with FVB; (2) Qdoba performed in full pursuant to the terms of the agreements; (3) FVB failed to open and FVD was in breach by virtue of its affiliate FVB being in breach; and (4) Qdoba has suffered damages commensurate with the value of the franchise agreements with FVB and FVD.

Much like the plaintiff in *Coughlin*, Qdoba gave Fiesta Ventures numerous opportunities to correct the alleged defaults in their franchise agreements, but to no avail. Countercl. ¶ 39. Eventually, Qdoba allegedly felt compelled to terminate the franchise agreements for reasons akin to those found in *Coughlin*, namely that Fiesta Ventures's "conduct clearly justified [Qdoba's] belief that performance was either unlikely or would be forthcoming only when it suited defendant's convenience. Plaintiffs . . . were therefore justified in treating defendant's non-performance as a total breach of the contract." 262 P.2d at 312. *Sealy*, too, even acknowledged a total breach would exist in a scenario such as the one plausibly present in the instant case, stating that distinguishing a total breach from a partial breach "depends on the nature of the breach and whether the breach itself prevents the franchisor from earning those future royalties." 51 Cal Rptr. 2d at 371. Where, as here, a defendant has allegedly failed to timely open a location after numerous opportunities to do so, the Court may plausibly infer that the nature of that breach totally prevents a franchisor from earning future royalties, or any royalties for that matter. *See Coughlin*, 262 P.2d at 311 (citing *Gold Mining & Water Co.*, 142 P.2d at 31–33) (finding

---

agreement with Qdoba in order for the Court to find it plausible for FVD to have breached. Fiesta Ventures's argument that FVD "was not terminated due to any alleged breach by" FVD is unconvincing considering the language of Section 28.3.14. Am. Mot. at 13.

that, "courts usually treat a breach as partial unless it appears that performance of the agreement is unlikely and that the injured party may be protected only by recovery of damages for the value of the promise")).

Accordingly, although this Court doubts that *Sealy* establishes the correct rule of law as the California Supreme Court would see it, under *Coughlin*, the Court concludes that the allegations against Fiesta Ventures plausibly constitute a total breach. Moreover, because the total breach exception in *Sealy* allows for recovery of lost future royalties, this entitles Qdoba to seek damages in the form of lost future royalties. Alternatively, if *Sealy* is not adopted, Qdoba's allegations against Fiesta Ventures still plausibly constitute a breach, partial or otherwise, which entitles Qdoba to recover lost future royalties. In either circumstance, Qdoba has requested relief in a form that would be available to them; namely, lost future royalties.

## II.     Fiesta Ventures's Policy Argument

Fiesta Ventures also argues that "[a]warding lost future royalties [to Qdoba] as damages would be contrary to California's public policy, namely the California Franchise Relations Act (CFRA) and the California Franchise Investment Law Act (CFIL)." Opp'n at 15.

Facially, the CFRA makes it clear that Fiesta Ventures's argument is misguided. Cal. Bus. & Prof. Code § 20015. The CFRA specifically states that its application is limited only to those franchises, "when either the franchise is domiciled in this state or the franchised business is or has been operated in this state." *Id.* The franchise agreements between Fiesta Ventures and Qdoba contain a forum selection clause, choosing California law as the governing law for any dispute arising from the agreements. Am. Mem. at 10. But that does not mean that the legal protections offered by CFRA are extended to the agreements at issue in this matter as Fiesta Ventures argues; in fact, just the opposite is true. *Id.*; *see also Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003) ("When a law contains geographical limitations on its application, however, courts will not apply it to the parties falling outside of those limitations, even if the parties

stipulate that the law should apply."). The text of the CFRA and precedent are clear that the CFRA simply does not apply in a case with out-of-state franchise locations. Cal. Bus. & Prof. Code § 20015; *see e.g.*, *Taylor v. 1-800-GOT-JUNK?, LLC*, 387 F. App'x 727, 729 (9th Cir. 2010) (stating that, "even though the parties stipulated to the application of Washington law," a Washington statute "was not applicable because of its territorial limitation").

CFIL, conversely, states that "no franchisor may terminate a franchise prior to the expiration of its term, except for good cause." Cal. Bus. & Prof. Code § 20020. Although not said expressly in their Motion, Fiesta Ventures's public policy argument seems to further invoke *Sealy* by stating that an award of lost future profits would be "unreasonable, unconscionable, and oppressive . . . [and] would place a bludgeon in the hands of franchisors in contract disputes with their franchisees." *Sealy*, 51 Cal. Rptr. 2d at 373. This, then, would conflict with the CFIL's requirement that "no franchisor may terminate a franchise prior to the expiration of its term, except for good cause." Cal. Bus. & Prof. Code § 20020. But the CFIL primarily governs the sale of franchises, which is not at issue in this matter. Cal. Corp. Code § 31001 ("[I]t is the intent of this law to prohibit the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled . . . .").

As Qdoba argued in their Opposition to the instant Motion, it is not entirely clear which part of the alleged events Fiesta Ventures believes are in contravention of the CFRA or CFIL. However, because the CFRA and CFIL are not applicable in this matter, the Court need not reach Fiesta Ventures's claim that Qdoba's actions are thus violative.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Counterdefendant Fiesta Ventures's Motion to Dismiss the Second and Fourth Counts in Counterclaimant Qdoba's, Counterclaim (ECF No. 30). Additionally, the Court **DENIES AS MOOT** Counterclaimant Qdoba's Request for Judicial Notice (ECF No. 31-1). The Court hereby **ORDERS** Counterdefendant Fiesta Ventures to file an **ANSWER** to Counterclaimant

Qdoba Franchisor, LLC's Counterclaim <u>no later than fourteen (14) days after the date on which this Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated:  August 21, 2025

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge